UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                            Plaintiff

v.                                                 Criminal Action No. 3:20-CR-81-RGJ

DEALTE JEFFRIES                                                     Defendant

* * * * *

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Dealte Jeffries' Motion to Suppress [DE 29].  This matter is ripe [DE 34; DE 35].  For the reasons below, Jeffries' Motion to Suppress [DE 29] is **DENIED**.

## I.      BACKGROUND

On August 21, 2020, Special Agent Michael Beerwart ("Beerwart"), alongside state and local law enforcement officers, executed a search warrant at 584 Brunerstown Road in Shelbyville, Kentucky.  [DE 32 at 109].  At the time, Beerwart was investigating Jeffries for "drug trafficking crimes and armed drug trafficking crimes and firearms-related offenses." *Id.* at 108.  During the execution of the search warrant, law enforcement officers arrested Jeffries.  *Id.* at 109.  They handcuffed him and sat him on the curb.  *Id.* at 110.

Approximately three to five minutes later, Beerwart approached Jeffries, introduced himself, and "pretty much right away . . . started to read his *Miranda* rights to him."  *Id.*  Beerwart read Jeffries his *Miranda* rights from a printed card Beerwart kept in his pocket.  *Id.* at 111.  Beerwart advised Jeffries of the rights he was waiving and asked Jeffries if he understood what his rights were.  Jeffries said that he did and agreed to speak with him.  *Id.* at 110-112.  Beerwart did not record himself reading Jeffries his *Miranda* rights.  *Id.* at 112.  He also did not ask Jeffries to

sign a written waiver form.  *Id.*  After reading Jeffries his *Miranda* rights, Beerwart conducted a recorded interview with Jeffries.  *Id.*  Beerwart testified that Jeffries never invoked his right to counsel or his right to remain silent.  *Id.* at 113-14.  Beerwart later memorialized in a report of investigation ("ROI") that he read Jeffries his *Miranda* rights and interrogated him.  *Id.* at 114.

A grand jury charged Jeffries with numerous narcotics and firearms crimes.  [DE 1].  Jeffries moved to suppress his statements.  [DE 29].  The Court held a suppression hearing [DE 32], and the parties filed post-hearing briefs.  [DE 34; DE 35].

## II.  STANDARD

In a suppression hearing, the burden of proof rests with the party seeking to suppress the evidence.  *United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986).  When a defendant seeks suppression of his statement based on a failure to receive *Miranda* warnings, he must establish by a preponderance of the evidence that he was subjected to a custodial interrogation.  *United States v. Lawrence*, 892 F.2d 80, 1989 WL 153161, at *5 (6th Cir. Dec. 18, 1989) (*per curiam* ) (unpublished opinion) (citing *Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986) and *United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984)).  If, however, the defendant has faced a custodial interrogation, the United States shoulders the burden of proving, by a preponderance of the evidence, that the defendant was provided the required *Miranda* warning. *United States v. Adams*, 583 F.3d 457, 467-68 (6th Cir. 2009) (citing *United States v. Nichols*, 512 F.3d 789, 798 (6th Cir. 2008)).

## III.  DISCUSSION

Jeffries moves the Court  "for an order suppressing the use at trial of any evidence directly or indirectly obtained as the result or consequence of the unauthorized obtainment of a statement

from the Defendant on or about August 26, 2020."[1]  [DE 29 at 72].  Jeffries requests the Court exclude his statement to Beerwart because "there is no evidence to support SA Beerwart's testimony that he even gave the warnings, there is no evidence that some exception applied, and there is no evidence that there was any reason to deviate from training in recording the alleged waiver in some way."  [DE 35 at 143].

In response, the United States argues that the Court should deny Jeffries' Motion because there "is no evidence in the record to suggest that the Defendant did not make a knowing, voluntary, and intelligent waiver of his rights.  In fact, the evidence in the record directly contradicts any assertion to the contrary. The Defendant was advised of his rights, he was given the opportunity to avail himself of them, and he knowingly chose to waive them and speak with law enforcement."  [DE 34 at 137].

"No person shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.  In *Miranda v. Arizona*, the Supreme Court, in prescribing safeguards for the effectuation of the Fifth Amendment, held that "the prosecution may not use statements . . . stemming from custodial  interrogation of the defendant unless it demonstrates the use of procedural safeguards  effective to secure the privilege against self-incrimination."  384 U.S. 436, 444 (1966).  The safeguards "prescribed by *Miranda* are to  ensure that the police do not coerce or trick captive suspects into confessing."  *Berkemer v. McCarty*, 468 U.S. 420, 433 (1984).  If a suspect is interrogated while in custody and he does not voluntarily, knowingly, and intelligently waive his *Miranda* rights, any statements he makes to the police must be suppressed.  *Id*. at 429.

---

[1] Beerwart testified that he questioned Jeffries on August 21, 2020.  [DE 32 at 108].  On cross-examination, Jeffries did not correct that date, so the Court interprets the reference in his Motion to August 26, 2020 as a typographical error.

A suspect is in custody if, under the totality of the circumstances, a reasonable person would not feel free to end the interrogation by the police and leave. *See Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004).

Here, it is undisputed—and in fact conceded by Beerwart—that he questioned Jeffries while Jeffries was in police custody. [DE 32 at 115-16]. Indeed, based on the circumstances, a reasonable person would not feel free to leave when he is handcuffed, arrested, and surrounded by numerous police officers. *See Yarborough*, 541 U.S. at 663; *see also United States v. Huebner*, No. 3:11-CR-123, 2012 WL 1392137, at *6 (E.D. Tenn. Feb. 13, 2012), *report and recommendation adopted*, No. 3:11-CR-123, 2012 WL 1392094 (E.D. Tenn. Apr. 20, 2012) ("[T]he Court finds that the Defendant was seized when he was ordered to the ground and handcuffed by the officers . . . Both Officer Crawford and Officer Ballard testified that the Defendant was not free to leave once they ordered him to the ground and Officer Fahidy placed handcuffs on him"). It is also undisputed that Beerwart interrogated Jeffries. [DE 32 at 112]. Because Jeffries was subject to custodial interrogation, the Court must determine whether Beerwart informed Jeffries of his *Miranda* rights and whether Jeffries knowingly, intelligently, and voluntarily waived them.

The Court personally observed Beerwart's testimony during the hearing and finds Beerwart's testimony credible. *See United States v. Almonte*, 348 F. Supp. 3d 402, 408 (E.D. Pa. 2018) ("Officer testimony that demonstrates that a suspect was properly advised of his rights and that a proper waiver was obtained, when credible, can be sufficient on its own"). Beerwart's testimony was corroborated by his ROI. [DE 32 at 114]. His testimony about reading Jeffries his *Miranda* rights was consistent, uncontradicted, and thorough:

Q. If you are able to tell the court exactly what you advised him, yes, please do.

A. Sure. Once I introduced myself to him. I got right down to advising him of his rights. I pulled this card out and I did as follows:

I read him, (Reading) Before I ask you any questions, I want to explain your rights to you. Then I would ask him if he understood. He said yes.

(Reading) You have the right to remain silent. I asked him if he understood that. He said yes.

(Reading) Anything you say can and will be used against you in a court of law. I asked him if he understood that. He said yes.

I said, (Reading) You have the right to consult with a lawyer before questioning and have a lawyer present during questioning. I asked him if he understood that. He said yes.

I asked him, (Reading) If you cannot afford a lawyer, one will be appointed to represent you free of charge prior to any questioning. I asked him if he understood that. He said yes.

Then I asked him, (Reading) Do you understand your rights? He said yes.

[DE 32 at 111].

Beerwart testified that he read Jeffries his *Miranda* rights. *Id.* at 111. He testified that he asked Jeffries if he understood each of his rights after reading it to him and Jeffries answered that he did. *Id.* He testified that Jeffries agreed to speak with him and did not invoke his right to counsel or to remain silent. *Id.* at 111-14; *Adams*, 583 F.3d at 467–68 (affirming district court's denial of suppression motion where "Officer Valiquette read Adams his *Miranda* rights after Adams was handcuffed, and asked if he understood those rights; Adams verbally responded, 'I do.' There is no indication in the record that Adams ever asked for a lawyer, nor does Adams assert that he made such a request"). Beerwart's testimony on cross-examination was consistent, [DE 32 at 116-117], and Jeffries did not offer his own account or any other witnesses to contradict Beerwart's testimony. Having considered the totality of the circumstances, the Court finds that

Jeffries was informed of his *Miranda* rights and that he gave a knowing, intelligent, and voluntary waiver of those rights.

Citing *New York v. Quarles*, 467 U.S. 649 (1984), Jeffries argues that the Court should grant his Motion because "there is no evidence to support SA Beerwart's testimony that he even gave the warnings, there is no evidence that some exception applied, and there is no evidence that there was any reason to deviate from training in recording the alleged waiver in some way." [DE 35 at 143].

*Quarles* is inapplicable because Beerwart, unlike the officers in *Quarles*, read Jeffries his *Miranda* rights before interrogating him. In *Quarles*, law enforcement officers were called to the scene to investigate a rape. 467 U.S. 649 at 651. The officers learned that the suspect was armed and had just entered a supermarket carrying the gun. *Id.* at 652. When they apprehended him, he was unarmed. *Id.* Before giving him the *Miranda* warnings, they asked him "where the gun was" and "he nodded in the direction of some empty cartons and responded, 'the gun is over there.'" *Id.* The Supreme Court held:

> that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination. We decline to place officers such as Officer Kraft in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

*Id.* at 657-58.

The United States did not argue that the public-safety exception to *Miranda* should apply in this case. Rather, the United States argued that Beerwart read Jeffries his *Miranda* rights. On re-direct, Beerwart explained that he did not record himself reading Jeffries his *Miranda* rights and

did not obtain a waiver form because of the frenetic scene during the execution of the search warrant:

> There were multiple different law enforcement agencies on scene. I didn't have control over a lot of them due to – you know, we have state police, we have locals. I don't have – I can't – I can't prevent them from inadvertently talking to Jeffries, asking him questions, and finding out if they asked him questions. There's a lot of chaos around that. I wanted to make sure that I got there, advised him of his rights right away, so we could prevent any of those issues down the road. I wanted to make sure his rights were intact.

[DE 32 at 128-29].

Jeffries has cited no authority for his assertion that *Miranda* warnings are invalid if they are not accompanied by a written waiver form. Indeed, that is not the law in the Sixth Circuit. *See Adams*, 583 F.3d at 467 ("Thus, a waiver of *Miranda* rights need not be made in writing, and need not be expressly made"). Likewise, a "recording is not a prerequisite to finding that the United States has satisfied its burden of establishing" that Jeffries made a knowing, intelligent, and voluntary waiver of his *Miranda* rights. *See United States v. Ramirez*, No. 3:13-CR-82-CRS, 2016 WL 11214627, at *8 (W.D. Ky. Dec. 9, 2016), *report and recommendation adopted*, No. 3:13CR-82-CRS, 2017 WL 384276 (W.D. Ky. Jan. 27, 2017); *see also United States v. Anderson*, 424 F. Supp. 3d 522, 525 (W.D. Ky. 2020) ("Before Anderson made these statements, an agent read Anderson his *Miranda* rights . . . from a DEA-13 card. When the agent asked if Anderson understood them, Anderson said yes. . . [It does not] . . . matter that Anderson's consent was neither written nor tape recorded. Both officers testified. Both officers were credible. Their recollections are unrefuted. And the steps they took to protect Anderson's Fifth Amendment right were beyond sufficient").

Based on this analysis, the Court finds that the United States has satisfied its burden of showing, by a preponderance of the evidence, that Jeffries made a knowing, intelligent, and

voluntary waiver of his *Miranda* rights. Thus, the Court concludes that Jeffries' rights under the Fifth Amendment were not violated as part of the August 21, 2020 interrogation.

### IV.    CONCLUSION

For the reasons set forth above, and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

1. Jeffries' Motion to Suppress [DE 29] is **DENIED.**